IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| CURLEY JAMES BOYKIN, | § | |
| *Petitioner*, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. H-06-3291 |
| | § | |
| RICK THALER, | § | |
| *Respondent*. | § | |

**MEMORANDUM OPINION AND ORDER**

Curley James Boykin, a state inmate proceeding *pro se*, seeks habeas relief challenging his parole revocation proceeding. Respondent filed a motion for summary judgment, (Docket Entry No. 20), to which petitioner responded. (Docket Entry No. 23.)

Based on consideration of the pleadings, the motion and response, the record, and the applicable law, the Court **GRANTS** summary judgment and **DISMISSES** this case for the reasons that follow.

## I. PROCEDURAL BACKGROUND

Petitioner was convicted of possession of a firearm by a felon in 1995 and sentenced to twelve years' incarceration. He was released to parole in 2001, conditioned on his participation in a substance-abuse treatment program. He failed to comply with his conditions of release and, in September of 2005, was placed in an in-patient Substance Abuse Felony Punishment Facility ("SAFPF") in lieu of parole revocation. Petitioner refused to participate in the SAFPF program, and the Texas Board of Pardons and Paroles (the "Board") revoked his parole on January 24, 2006. Petitioner's state application for habeas relief

challenging the parole revocation was dismissed on September 4, 2006, for his failure to exhaust administrative remedies under sections 501.008(b) and (c) of the Texas Government Code. *Ex parte Boykin*, WR 35,236-03.

Petitioner raises the following habeas grounds in the instant section 2254 petition:

(1) the Board denied him due process by revoking his parole based on false information;

(2) the Board denied him due process by failing to hold a preliminary hearing;

(3) the Board denied him due process by refusing to appoint him counsel at the revocation hearing;

(4) the Board denied him due process by transferring him to the SAFPF;

(5) the Texas Department of Criminal Justice ("TDCJ") denied him due process by issuing him a new TDCJ number;

(6) he is being held in custody past his mandatory supervised release date;

(7) the Board unlawfully denied him street time credit; and

(8) the application of state law violated his *ex post facto* protections.

Respondent argues, and petitioner does not disagree, that these claims have not been exhausted through the Texas Court of Criminal Appeals. Respondent further argues that the claims fail on the merits.

## II. FAILURE TO EXHAUST

Respondent argues that petitioner's claims should be dismissed for failure to exhaust. A fundamental prerequisite to federal habeas relief under 28 U.S.C. § 2254 is the exhaustion

2

of all claims in state court prior to filing for relief in federal court. *Sterling v. Scott*, 57 F.3d 451, 453 (5th Cir. 1995). Section 2254(b) provides that:

> (1) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that:
>
>> (A) the applicant has exhausted the remedies available in the courts of the State; or
>>
>> (B)(i) there is an absence of available State corrective process; or (ii) circumstances exist that render such process ineffective to protect the rights of the applicant.

28 U.S.C. § 2254. This requirement is designed in the interests of comity and federalism to give state courts the initial opportunity to pass upon and correct errors of federal law in a state prisoner's conviction. *Picard v. Connor*, 404 U.S. 270, 275-76 (1971). The purpose and policy underlying the exhaustion doctrine is to preserve the role of the state courts in the application and enforcement of federal law and prevent disruption of state criminal proceedings. *Rose v. Lundy*, 455 U.S. 509, 518 (1982).

A petition under 28 U.S.C. § 2254 must be dismissed if state remedies have not been exhausted as to any of the federal claims. *Castille v. Peoples*, 489 U.S. 346, 349 (1989). For Texas state inmates, the exhaustion doctrine "requires that the Texas Court of Criminal Appeals be given an opportunity to review and rule upon the petitioner's claim before he resorts to the federal courts." *Richardson v. Procunier*, 762 F.2d 429, 431 (5th Cir. 1985). Once a federal claim has been fairly presented to the Texas Court of Criminal Appeals, either

3

through direct appeal or collateral review, the exhaustion requirement is satisfied. See generally, *Castille*, 489 U.S. at 351. In order to avoid piecemeal litigation, all grounds raised in a federal application for writ of habeas corpus must first be presented to the state's highest criminal court prior to being presented in federal court. *Rose*, 455 U.S. at 522. If even one claim is unexhausted, the entire petition must be dismissed for failure to exhaust state remedies. *Id.*

Respondent correctly argues in the motion for summary judgment that, at the time this petition was filed, petitioner had not properly presented his claims to the Texas Court of Criminal Appeals. Accordingly, there has been no fair presentation of his claims to the state court, and thus, the state court has not had the initial opportunity to pass upon and correct any alleged errors of federal law. While the exhaustion requirement can be excused when exceptional circumstances exist, *see Deters v. Collins*, 985 F.2d 789 (5th Cir. 1993), no such circumstances are argued or appear here. To the contrary, petitioner did not contest respondent's summary judgment assertion of non-exhaustion.

The Court notes that, during the pendency of this case, petitioner filed an unsuccessful state application for habeas relief challenging this parole revocation and loss of street time credit. He then filed a second federal habeas petition raising one or more of his instant claims. *Boykin v. Quarterman*, C.A. No. H-08-1940 (S.D. Tex. 2008). The Court denied that petition on the merits on June 9, 2009. Although petitioner has now exhausted one or more

4

of his habeas claims, no claims were exhausted at the time he filed the instant petition. Accordingly, petitioner's claims are **DISMISSED** for failure to exhaust.

### III. NO MERITORIOUS CLAIMS

Even assuming exhaustion, petitioner's claims are without merit. Petitioner's claim for loss of street-time credit was rejected by the Court in C.A. No. H-08-1940, and will not be re-addressed here. Further, because he has been released from custody, his request for immediate release to parole or mandatory supervision is moot.

A. <u>Due Process Claims</u>

Petitioner's due process claims regarding the Board's failure to set a preliminary hearing and provide appointed counsel are meritless. *See Collins v. Turner*, 599 F.2d 657, 658 (5th Cir. 1979) (denying habeas relief for failure to conduct preliminary probation revocation hearing when final revocation hearing had been conducted). It is undisputed that petitioner here was afforded a final revocation hearing, and no due process violation is shown. Nor does he assert any harm or prejudice caused by lack of a preliminary hearing. *See Fry v. Pliler*, 551 U.S. 112 (2007); *Brecht v. Abrahamson*, 507 U.S. 619 (1993).

Nor did petitioner enjoy a constitutional right to appointed counsel at the revocation hearing. *See Morrissey v. Brewer*, 408 U.S. 471(1972); *see also Gagnon v. Scarpelli*, 411 U.S. 778, 790 (1973). According to the parole revocation hearing report, the hearing officer determined as follows: "Even though I found OFFENDER to be indigent, I determined OFFENDER was denied a state appointed attorney as the allegations are technical only and

OFFENDER is articulate and understands the hearing process." *Ex parte Boykin*, p. 57 (original capitalizations). The hearing officer also determined that, "OFFENDER was denied State Appointed Counsel based on the fact that he articulated clear and effective understanding of what he is accused of violating and the complexity of the issues involved did not warrant it." *Id.*, p. 51 (original capitalizations). Petitioner presents no probative summary judgment evidence to the contrary, and relies instead on his incorrect assertion of an absolute right to counsel.

Petitioner further complains that, at some point in 2005 or 2006, he was issued a new prison identification number, changing his identification number from 765402 to 1334070. His assertion of a protected property or liberty interest in his prison identification number is unsupported by any Supreme Court or Fifth Circuit authority and is patently meritless.

Equally unavailing is petitioner's complaint that the Board revoked his parole based on false information that he was serving a sentence for possession of a controlled substance. Judicial review of a decision to revoke parole "is quite circumscribed." *Villarreal v. U.S. Parole Comm'n*, 985 F.2d 835, 839 (5th Cir. 1993). Due process only requires that there be "some evidence" in the record to support the decision to revoke parole. *Id.* The hearing report of September 20, 2005, recited the alleged salient parole violations as "Failure to abstain from the use of illegal drugs by testing positive for Cocaine, 08/10/05" and "Failure to submit to urinalysis, 08/30/05[.]" *Ex parte Boykin*, p. 52. The revocation record provides more than "some evidence" supporting these parole violations, particularly in light of

petitioner's admissions of the events. Regardless, the record shows that petitioner was convicted of possession of cocaine in 1992, and he does not dispute the State's assertion that he was serving time under that conviction when he was paroled in 2001. (Docket Entry No. 20, Exhibit C; p. 20.)

B.   Transfer to SAFPF

Petitioner's complaints regarding his transfer to the SAFPF do not entitle him to habeas relief. Petitioner argues that, because his conviction for felon in possession of a firearm was not a drug-related offense, the Board had no authority under state law to transfer him to the SAFPF. That the Board was, or was not, authorized under state law to transfer petitioner to the SAFPF is not an issue for this Court's determination. *See Estelle v. McGuire*, 502 U.S. 62, 67 (1991) (holding that claim for violation of state law does not, standing alone, present a cognizable federal habeas claim).

Further, in *Morrison v. Brown*, 199 F.3d 438 (5th Cir. 1999), the Fifth Circuit held that a parolee's transfer to a SAFPF involved merely a change in the conditions of his parole. The Court noted that, under *Sandin v. Conner*, 515 U.S. 472, 484 (1995), Texas parolees have no liberty interest in parole that is protected by the due process clause and cannot complain of the constitutionality of procedural devices attendant to parole decisions. *Allison v. Kyle*, 66 F.3d 71 (5th Cir. 1995).

Petitioner contends, however, that he was entitled to notice and a hearing prior to the transfer. Despite the restrictions imposed by incarceration, due process guarantees a prisoner

7

some process before the government can impose conditions that are "qualitatively different" from the punishment characteristically suffered by a person convicted of the crime, and which have "stigmatizing consequences." *Coleman v. Dretke*, 395 F.3d 216, 221 (5th Cir. 2004). Such restrictions also accompany parole and its attendant conditions of release. These conditions are necessary to achieve parole's intended purpose of reintegrating the individual into society while preventing further antisocial acts. *Morrissey*, 408 U.S. at 478-80. However, as in the prison context, a condition may present such a "dramatic departure from the basic conditions" of a parolee's sentence that the state must provide some procedural protections prior to its imposition. *Coleman*, 395 F.3d at 222.

In *Vitek v. Jones*, 445 U.S. 480, 494 (1980), the Supreme Court found unconstitutional a state law that allowed prison officials to identify inmates as mentally ill and, without a hearing or other opportunity to contest, transfer them to mental institutions for involuntary confinement and treatment. The Court held that, based on the combination of the associated stigma and compelled behavior modification treatment, involuntary commitment to an institution went beyond the ordinary loss of freedom suffered by inmates. *Id.* at 492. Because the inmate in *Vitek* had been deprived of a protected liberty interest, the Court found that the state was required to provide procedural protections before initiating involuntary commitment and treatment. *Id.* at 491-494.

Neither the Fifth Circuit nor the Supreme Court has afforded inmates a protected liberty interest in not being compelled to participate in a SAFPF program as a condition of

8

parole. Nor can it be said that a drug rehabilitation program carries with it the "stigmatizing consequences" associated with involuntary confinement in a mental institution, *Vitek*, or state-wide public registration as a sex offender, *Coleman*. Further, petitioner in the instant case tested positive for cocaine while on parole and had a prior conviction for possession of cocaine, thus establishing the rational correlation between precipitating event and condition of parole found absent in *Vitek* and *Coleman*. Although petitioner argues that he is "unqualified" for the SAFPF program because he did not commit a criminal offense while under the influence of drugs, a parolee may be transferred to a SAFPF if there is a finding that drug or alcohol abuse significantly contributed to the violation of the terms of parole or mandatory supervision. *See* TEXAS BOARD OF PARDONS AND PAROLES POLICY STATEMENT No. 04-01.07. Petitioner's use of cocaine, as evidenced by the positive drug test, constituted a violation of his terms of parole. No procedural due process violation is shown.

Nor is this Court inclined to agree with petitioner's argument that his transfer to the SAFPF program constituted arbitrary state action that "shocks the conscience" for purposes of establishing a substantive due process violation. As stated in *Coleman*,

> In *County of Sacramento v. Lewis*, the Supreme Court reiterated its reluctance to expand the concept of substantive due process. While the core of substantive due process is protection from arbitrary government action, 'only the most egregious official conduct' is arbitrary in the constitutional sense. The Court noted that behavior most likely to 'shock the conscience' and thus support a substantive due process claim is 'conduct intended to injure in some way unjustifiable by any government interest.' In the present case, sex offender treatment serves the government interest in protecting members of the community from future sex offenses. In addition, as invasive as the therapy

9

appears, we doubt that the parole panel imposed the therapy condition with the intent to injure [petitioner].

395 F.3d at 224-25 (citations omitted). Neither petitioner nor the record before this Court demonstrates that the Board's transfer of petitioner to a SAFPF was intended to injure him in any way.

    C.    <u>*Ex Post Facto* Violation</u>

Petitioner asserts that the retroactive application of Texas Government Code sections 508.149, .184, .185, .221, .224, and .283 to his parole violated state and federal constitutional protections against *ex post facto* laws. He claims that these statutory provisions became effective on September 1, 1997, but were retroactively applied to his 1995 conviction. The Court will address petitioner's federal *ex post facto* claim, but not his state constitutional claim. *See Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991) ("We have stated many times that federal habeas corpus relief does not lie for errors of state law.") (citations and internal quotations omitted); *Collier v. Cockrell*, 300 F.3d 577, 585 (5th Cir. 2002) (holding that claims for state constitutional violations do not give rise to a federal habeas issue).

Although there is no constitutionally protected liberty interest in parole in Texas for purposes of federal due process, an *ex post facto* challenge does not turn on the existence of a liberty interest. *Orellana v. Kyle*, 65 F.3d 29, 32 (5th Cir. 1995). "One function of the *Ex Post Facto* Clause is to bar enactments which, by retroactive operation, increase the punishment for a crime after its commission." *Garner v. Jones*, 529 U.S. 244, 249 (2000).

10

Retroactive changes to parole laws may, in some cases, violate this precept. *Id.* at 250. The proper inquiry in parole cases is whether the retroactive change in law creates a sufficient risk of increasing the measure of punishment attached to the covered crimes. *Id.* For instance, laws that affect a prisoner's eligibility for parole may have *ex post facto* implications, but laws that affect the discretionary determination of suitability for parole do not. *Wallace v. Quarterman*, 516 F.3d 351, 355 (5th Cir. 2009).

Petitioner claims that, prior to the amendments effective September 1, 1997, he was entitled to street time credit following parole revocation because state law in effect at the time of his underlying conviction in 1995 did not exclude robbery convictions. Petitioner misunderstands the statutory scheme. Before September 2001, Texas law allowed the Board to disregard the street time *any* prisoner accumulated while on release. TEX. GOV'T CODE § 508.283. Prisoners had no liberty interest in retention of street time upon revocation of release status. *See Thompson v. Cockrell*, 263 F.3d 423, 426 (5th Cir. 2001). Under Texas law in effect when petitioner was released on parole in December of 2001, an inmate serving the remainder of his sentence after the revocation of his conditional release did not receive credit for the time from the date of his release to the date of revocation. TEX. GOV'T CODE § 508.283(b), previously TEX. CODE CRIM. PROC. art. 42.18 § 14(a). This statutory language remained substantively unchanged from 1965 through September 2001. *Ex parte Spann*, 132 S.W.3d 390, 393 (Tex. Crim. App. 2004) (noting that prior to 2001, section 508.283

11

prescribed that any parole violator forfeited the benefit of street-time credit). Petitioner demonstrates no *ex post facto* violation.

## IV. CONCLUSION

Respondent's motion for summary judgment (Docket Entry No. 20) is **GRANTED**. The petition for a writ of habeas corpus is **DENIED**, and this case is **DISMISSED**. A certificate of appealability is **DENIED**. Any and all pending motions are **DENIED AS MOOT**.

The Clerk will provide a copy of this order to the parties.

Signed at Houston, Texas, on this the 26 day of October, 2009.

KEITH P. ELLISON
UNITED STATES DISTRICT JUDGE